NAPIER HAT MANUFACTURING COMPANY, APPELLANT,
v. ESSEX COUNTY PARK COMMISSION, RESPONDENT.

Submitted October 28, 1932—Decided January 31, 1933.

For the appellant, *Aquila N. Venino.*

For the respondent, *J. Henry Harrison.*

The opinion of the court was delivered by

CASE, J. This is an appeal by Napier Hat Manufacturing Company, a corporation, the owner of lands under condemnation, from the judgment entered in the Essex County Circuit Court on jury verdict on the appeal from the award of the commissioners in condemnation. The appeal is also from two orders made by the Essex County Circuit Court subsequent and incidental to the said judgment.

The Napier Hat Manufacturing company owned and operated a manufacturing plant upon premises in Belleville that were bounded on the east by the Passaic river and that were intersected by a highway, known as Main street, running approximately parallel to the river. Main street became part of state highway route No. 21. The state highway commission in connection with the improvement and development of that route purchased from the Napier company a strip of land fifty feet in width abutting Main street taken from and running the whole length of that part of the Napier company lands that lay between Main street and the river. The acquisition of the land was by deed from Napier Hat`Manufacturing Company to the State of New Jersey dated March 14th, 1930, conveying in fee the land so described "together with all right, title and interest of the party of the first part in and to Main street adjacent to the above described premises. Together with such slope and drainage rights as may be required for the construction of said state highway * * *." Thereafter, on August 10th, 1931, the Essex county park commission, acting under the Eminent Domain act (*Pamph. L.* 1900, *ch.* 53, *p.* 79), initiated the present proceedings by filing a petition for the appointment of commissioners for the condemnation, for public purposes, of the Napier company's remaining lands between the highway and the river, subject, however, to the right of the Napier company to use the condemned lands for certain specified purposes. The uses subject to which the lands were taken were enlarged by amendment from time to time, until, as the issue was finally framed on the Circuit Court appeal, the taking was subject to the right of the Napier Hat Manufacturing Company, its suc-

cessors and assigns, so long as it or any one of them should use the land on the westerly side of the highway for industrial purposes, to operate, maintain and repair for use in connection with such industrial purposes the existing oil and water pipes, flume and artesian well on the taken lands, with the further privilege of using the bulkhead along the Passaic river frontage of the taken lands for boats carrying fuel oil to tie up to while discharging oil through the said oil pipe for use in connection with such industrial purposes, and to the right of the Napier Hat Manufacturing Company, its successors and assigns, so long as it or any one of them should use the lands on the westerly side of the highway for industrial purposes, to construct and maintain a conduit through the taken lands and to install and maintain in connection therewith pipe lines for use in taking and returning water from and to the river and in carrying steam to barges using the oil pipe.

The verdict rendered by the jury in the Circuit Court in favor of the Napier company was for the sum of $13,000 as against the award of $14,500, made by the commissioners in condemnation. After judgment had been entered on the verdict and costs had been taxed against the Napier company in the amount of $87.80, the latter company moved to set aside the taxation of costs against it; and the Essex county park commission moved that the costs taxed against the Napier company on the trial of the appeal in the Circuit Court should be deducted from the verdict found by the jury and that the judgment be amended accordingly. The first motion was denied, and the second was granted.

On taking the appeal to this court the Napier company wrote down thirty-five grounds. Although eight of these grounds have been abandoned, the number remaining is still too great to be discussed in detail within the reasonable limits of an opinion; but we shall indicate the reasons that bring us to an affirmance of the judgment and orders appealed from.

The first, second, third and sixth grounds go to the overruling of questions that relate to the uses reserved by the condemnation to the owner and that therefore, in our opinion, are immaterial to the issue.

The fourth, tenth, twelfth and twentieth grounds do not set forth the specific rulings alleged to have been erroneously made and therefore are not properly before us. *Booth* v. *Keegan,* 108 *N. J. L.* 538.

The fifth, twenty-first, twenty-second and twenty-third grounds are directed towards the admission of questions framed to bring out the fact, and the effect, of the earlier conveyance to the State of New Jersey. The information thus sought was relevant to the issue and the questions were therefore proper. The owner was not entitled to be compensated by the Essex county park commission for damages incident to a voluntary conveyance already made and paid for.

The seventh, eighth, thirteenth, fourteenth, twenty-fourth, thirty-second, thirty-third and thirty-fourth grounds are abandoned.

The ninth ground is that the court erred in overruling the following question asked by appellant of one of its witnesses: "Will you kindly state what the market value of that property was before and what the property was worth after the taking, including any damages by reason of the taking?" The ruling in nowise prevented the appellant from proving damages ensuing to the retained lands by the taking of that part that was being condemned or from provng the value of the lands actually taken; indeed the exact figures on each element of damage were subsequently elicited from the same witness. Consequently, no harm resulted to the appellant. But aside from that the question was improperly framed for this if for no other reason, namely, that the questioner used the word "property" twice without indicating in either instance the *quantum* of property referred to. We assume that the question was directed in the first instance towards the value of the entire property before anything was taken and in the second instance to the value of the property that remained after the taking had been accomplished. But the question does not so state.

In the eleventh ground appellant alleges error by the trial court in overruling the following question asked by the appellant of its witness Houston:

"Would you say that using this waterfront property in common with a piece of property across the way is an element of value that goes to make up the value of a piece of property?"

The question refers to two properties; one is "the waterfront property" and the other is a "piece of property" across the way. We understand the inquiry placed by the questioner to the witness to be whether the use of the waterfront property in common with the piece of property across the way is an element to be considered in determining the value of the latter property or, coming directly to the goal, in determining the damage to the latter property effected by the taking of the former, for which damage the common owner should be compensated. Either that is the purport or else the question is too obscure to stand; and if that be the purport, no harm was done by the ruling because the witness a little later testified that the severance of the ownership did in fact adversely affect the westerly property to the latter's damage $8,000.

The fifteenth ground complains that the court overruled this question asked of appellant's witness Linnett:

"If this property could be used in connection with the westerly property isn't the usefulness and the adaptability of the easterly property increased?"

That question had already in effect been asked of, and answered by, the witness in the following language:

"*Q.* In your opinion, does the using of the Napier waterfront property in common with the property on the westerly side of Main street enhance the value of the waterfront property?

*A.* I don't consider that it enhances the value of the property to the east as a unit, but I do think that the lack of use of that property to the east does damage to the part to the west."

The easterly property is the waterfront property and the parcel that is being taken by condemnation. The westerly property is that which is still retained in its entirety by the appellant.

The sixteenth ground is that the court erred in overruling the following question:

"Yet if it were not connected with the.westerly property, such use could not be made of it?"

The "it" referred to in the question is the waterfront property. The court action was proper because the question assumed that there was and would be no connection between the easterly and westerly properties whereby oil could be delivered from the waterfront to the westerly property whereas there was and was to be a pipe line connecting the two. The question assumed an untruth.

Three questions asked on the cross-examination of appellant's witness Linnett are the subject-matter of the seventeenth, eighteenth and nineteenth grounds. The questions searched the witness as to the foundation upon which he reached the values testified to by him and constitute proper cross-examination.

The twenty-fifth and the twenty-sixth grounds are related. The former criticizes the court's charge in that it left to the jury to determine whether or not the waterfront property and property on the westerly side of Main street constituted a unitary holding, and the latter complains of the refusal by the court to charge on appellant's request that the two tracts were actually used in common and constituted a unitary holding. If there was, under the evidence, a doubt as to the unitary use over and beyond those uses that, by the terms of the condemnation, were specifically reserved to the owner, then clearly the court was right. Judge Porter, sitting below, was satisfied that prior to the acquisition of lands and rights by the State of New Jersey through its highway commission the Napier company had used the two tracts in conjunction, but he was in doubt as to whether the conditions incident to the taking of the highway lands and the destruction or impairment of the buildings incident thereto had not disturbed the use of the two tracts in common except as to those respects in which, by the terms of the condemnation, the owner still retained in itself, its successors and assigns, a continued use. We think that the judge was justified in this attitude and that the question was properly left to the jury.

The twenty-seventh ground contains an elaborated request

upon the court to charge the appellant's right to compensation. We consider that the court's charge amply covered the subject-matter of the request. The charge, as delivered, instructed the jury that no property of the appellant could be taken without just compensation, that the appellant was to be compensated not only for the lands taken but, if the jury should find a unity between the easterly and westerly tracts, compensation for consequential damages to the remaining land; and informed the jury as to the rules applicable to the determining of damages and values.

By the request to charge set out in the twenty-eighth ground the appellant would have had the court charge the jury, in effect, that in arriving at the value of the land and property taken no deduction should be made from the value of the fee on account of the easements reserved to the owner. The request was faulty. To have so charged would have been to instruct the jury that the appellant was entitled to be compensated for property rights that were not being taken; and the appellant was not, of course, so entitled.

The matters contained within the requests to charge set forth in the twenty-ninth and thirtieth grounds were, we think, fairly charged in so far as the proofs justify. We find nothing in the proofs to indicate that the appellant was the owner of the riparian rights as those rights are understood in the legal phraseology of this state.

The request to charge contained within the thirty-first ground of appeal was properly refused by the court for the reason that it incorrectly limited the river benefits and advantages reserved in the condemnation to the receiving of oil through an underground pipe line. Other reserved uses have already been sufficiently stated.

The thirty-fifth ground alleges error in the order refusing to relieve the appellant from the taxed costs on the Circuit Court appeal. Section 13 of the Eminent Domain act, *supra,* provides that "* * * if said jury shall be applied for by the owner and shall find a less sum than the commissioners awarded, then costs shall be paid by said appellant and either deducted out of said sum found by the jury or execution

awarded therefor, as the court shall direct  *  *  *." The final amendment to the petition for condemnation, made after the appeal from the award by the commissioners had been taken, enlarged the duration of the rights and easements reserved in favor of the westerly property by substituting the word "industrial" for the word "manufacturing" wherever the latter appeared in the second amended petition; with the result that the reservations were made to continue so long as the Napier Hat Manufacturing Company, its successors and assigns, should use the westerly premises for industrial purposes and not, as the provision theretofore had been, so long as they or any one of them should use the premises for manufacturing purposes. It is contended by the appellant that this amendment so changed the issue that there could be no real admeasurement between the jury verdict and the commissioners' award for the purpose of fastening the costs upon the appellant. We think that this argument should not pervail. The amendment was made with the knowledge of, and without objection by, the appellant. Had the appellant thereupon accepted the award and discontinued the appeal, a more convincing argument could have been made in its favor as to the costs; but with knowledge of the amendment it nevertheless still insisted that the award theretofore made was inadequate and went to its trial on the issue thus framed. Appellant has advanced nothing, either from the statute or in reason, that should relieve it from that imposition of costs which the lessened award by the jury entails.

The judgment and the orders appealed from will be affirmed.

*For affirmance*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Heher, Kays, Hetfield, Wells, Kerney, JJ. 13.

*For reversal*—None.